## UNITED STATES v. HALSELL.

(Circuit Court of Appeals, Eighth Circuit. January 10, 1918.)

No. 4965.

1. INDIANS ⊂⊃15(1)—INDIAN LANDS—CONVEYANCES.

Act July 1, 1902, c. 1375, 32 Stat. 716, ratified by the Cherokee Nation August 7th, of that year provides in section 11 that there shall be allotted to every citizen of the Cherokee Tribe land equal in value to 110 acres of the average allottable of the Cherokee Nation. Section 13 provides that every member of the tribe shall designate as a homestead out of his allotment land equal in value to 40 acres, which shall be inalienable during his life, not exceeding 21 years from the date of the certificate of allotment, and that a separate certificate shall issue for the homestead. Section 14 provides that lands allotted shall not be incumbered or alienated by the allottee or his heirs before the expiration of 5 years from the date of the ratification of the act, while section 15 provides that all lands allotted to members of the tribe, except such land at such time set aside for a homestead, shall be alienable in 5 years after issuance of patent. Section 20 provides that if any person, whose name appears on the roll of the members of the tribe shall have died subsequent to September 1, 1902, and before receiving his allotment, the lands to which such person would have been entitled, if living, shall be allotted in his name and shall descend to his heirs. *Held*, that homestead property allotted to a member of the Cherokee Nation is not, on her death shortly after allotment, alienable by her heirs until the expiration of at least 5 years after August 7, 1902, the date of ratification of the act, the 5-year restriction on alienation imposed by section 14 applying to the homestead of an allottee who dies after receiving an allotment.

2. INDIANS ⊂⊃15(2)—INDIAN LANDS—CONVEYANCES.

Before the expiration of 5 years after ratification of the Act of 1902, Congress by Act April 26, 1906, c. 1876, § 22, 34 Stat. 145, provided that the adult heirs of any deceased Indian of either of the Five Civilized Tribes, whose selection has been made or to whom a deed or patent has been issued for his or her share of the land of the tribe, to which he or she belongs, may sell or convey the lands inherited from such decedent, but all conveyances made by heirs, who are full-blood Indians, shall be subject to the approval of the Secretary of the Interior. This act was modified by Act May 27, 1908, c. 199, § 9, 35 Stat. 315, declaring that the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions on alienation of such allottee's lands, but that no conveyance of any interest of any full-blood Indian heir shall be valid, unless approved by the court having jurisdiction of the settlement of the estate of the deceased allottee. *Held*, that as Congress had power, the first restrictions on alienation by the heirs of allottees not having expired, to place new restrictions on alienation, a full-blood heir's conveyance of the homestead of a full-blood Cherokee allottee, made more than five years after ratification of the Act of 1902, is invalid, where not approved by the court having jurisdiction of the settlement of the allottee's estate.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit by the United States against E. L. Halsell. From a decree in part for the United States, and dismissing the bill as to part of the relief sought, the United States appeals. Modified, with directions, and otherwise affirmed.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. P. McGinnis, U. S. Atty., and Paul Pinson, Sp. Asst. U. S. Atty., both of Muskogee, Okl.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER District Judges.

MUNGER, District Judge. The United States brought this suit to cancel certain conveyances made to appellee by an heir of Eliza Simpson. Eliza Simpson was a full-blood Indian of the Cherokee Tribe, duly enrolled, and there was allotted to her certain land as a homestead and certain land as surplus. About six months after receiving her allotment she died intestate on January 20, 1905, leaving surviving her as one of her heirs Mary Nelson, also a full-blood Cherokee Indian. Mary Nelson, on February 16, 1907, executed to appellee a warranty deed, conveying the homestead and surplus lands that had been allotted to Eliza Simpson. At the same time she entered into a contract with appellee whereby she agreed to convey this land to him, and in pursuance of the contract she executed a quitclaim deed to appellee on August 22, 1907, conveying the same lands. None of these conveyances was approved by either the Secretary of the Interior or by the court having jurisdiction of the estate of the deceased allottee. The decree adjudged void and canceled the deeds so far as they purported to convey the surplus lands, but dismissed the bill so far as it sought cancellation of the conveyance of the homestead to appellee, and the government appeals.

[1] By an act of Congress approved July 1, 1902 (32 Stat. 716) and ratified by the Cherokee Nation on August 7, 1902, it was provided as follows:

"Sec. 11. There shall be allotted by the Commission to the Five Civilized Tribes and to each citizen of the Cherokee Tribe, as soon as practicable after the approval by the Secretary of the Interior of his enrollment as herein provided, land equal in value to one hundred and ten acres of the average allottable lands of the Cherokee Nation, to conform as nearly as may be to the areas and boundaries established by the government survey, which land may be selected by each allottee so as to include his improvements.

"Sec. 12. For the purpose of making allotments and designating homesteads hereunder, the forty-acre, or quarter of a quarter section, subdivision established by the government survey may be dealt with as if further subdivided into four equal parts in the usual manner, thus making the smallest legal subdivision ten acres, or a quarter of a quarter of a quarter of a section.

"Sec. 13. Each member of said tribe shall, at the time of the selection of his allotment, designate as a homestead out of said allotment land equal in value to forty acres of the average allottable lands of the Cherokee Nation, as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of the certificate of allotment. Separate certificate shall issue for said homestead. During the time said homestead is held by the allottee the same shall be nontaxable and shall not be liable for any debt contracted by the owner thereof while so held by him.

"Sec. 14. Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation, or be alienated by the allottee or his heirs, before the expiration of five years from the date of the ratification of this act.

"Sec. 15. All lands allotted to the members of said tribe, except such land

as is set aside to each for a homestead as herein provided, shall be alienable in five years after issuance of patent."

"Sec. 20. If any person whose name appears upon the roll prepared as herein provided shall have died subsequent to the first day of September, nineteen hundred and two, and before receiving his allotment, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas: Provided, that the allotment thus to be made shall be selected by a duly appointed administrator or executor. If, however, such administrator or executor be not duly and expeditiously appointed, or fails to act promptly when appointed, or for any other cause such selection be not so made within a reasonable and proper time, the Dawes Commission shall designate the lands thus to be allotted."

Cases involving the restrictions found in these sections of this act of Congress have been frequently before the courts. In the case of Truskett v. Closser, 198 Fed. 835, 117 C. C. A. 477, it was regarded by this court as unquestionable that the language of section 14 of the act included homesteads in its scope, but that any implied permission deducible therefrom, allowing alienation of the homestead of a living allottee after five years, was negatived by the express prohibition of such alienation contained in section 13. It was also there held that any implied permission inferable from the language of section 14 that would allow alienation of the surplus lands of a living allottee after 5 years from the ratification of that act of Congress was clearly negatived by the language of section 15, which fixed its 5-year period as running from the date of the patent. In Sunday v. Mallory, 237 Fed. 526, 150 C. C. A. 408, it was held that land allotted in the name of a deceased Cherokee Indian was not subject to the restriction on alienation imposed by sections 13, 14, and 15 of this act of Congress, as these three sections related only to lands allotted to living members of the tribe, and that section 20 of the act governed. Section 14 is thus left a restricted field of operation, but, by its terms it includes the homestead lands of an allottee who dies after receiving an allotment. Any implied right that may be drawn from the language of section 13, allowing heirs of an allottee who dies after the allotment to alienate the homestead at once after the death of the allottee because it is there declared to be inalienable before his death, but not exceeding 21 years, is met by the specific negative of section 14, declaring that lands allotted to citizens shall not, in any manner whatever or at any time, be alienated by the allottee's heirs before the expiration of 5 years from the date of the ratification of that act. This prohibition is clear and positive, and to give it full force gives meaning and consistency to each portion of the act of Congress, and it is in accord with the settled policy of the government to protect the Indians against their hasty and improvident conveyances. The act shows a special consideration towards the homestead selected by the Indian. He was allowed to select as his homestead the lands upon which his improvements were situated, and the homestead was made inalienable by his conveyance during his lifetime, not exceeding 21 years, whereas he could dispose of his surplus lands after 5 years. The restriction of alienation of the

homestead for a period of 5 years after the ratification of this act of Congress, in case an allottee died soon after receiving an allotment, granted to the family of the deceased the continued benefit of the land and buildings that had constituted the family home, allowed time for deliberation and counsel before the heirs should exercise the new freedom of conveying their lands, and before the family should make the natural separation that would result, and also prevented the disturbance arising from an immediate conveyance by a portion of the heirs who might have left the family home and who might be ready to convey.

[2] We conclude that homestead lands such as that belonging to Eliza Simpson were not alienable by her heirs at least before 5 years from the ratification of the act of Congress, or, in other words, until after August 7, 1907. The second conveyance of Mary Nelson to appellant was executed after that date, on August 22, 1907. Before the homestead land had become free from the restrictions referred to, Congress passed an act approved April 26, 1906 (34 Stat. 137), a portion of which is as follows:

"Sec. 22. That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

This act was afterwards modified by the act of Congress approved May 27, 1908 (35 Stat. 315) as follows:

"Sec. 9. That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

That Congress had power at the time of the passage of these acts and while the alienation of this land was still prohibited, to place this further restriction upon conveyances by heirs of the deceased allottee of the homestead, no longer admits of doubt. Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738; United States v. Western Investment Co., 226 Fed. 726, 141 C. C. A. 482; Parker v. Riley, 243 Fed. 42, 155 C. C. A. 572. As there was no approval by the proper authority of the conveyance by Mary Nelson, the decree of the lower court will be modified, with directions to enter a decree canceling the conveyances from Mary Nelson to appellee of the homestead lands of Eliza Simpson; otherwise to be affirmed.